## THE NEW ENGLAND GLASS COMPANY *vs.* GEORGE LOVELL & others.

In an action on the case against the owners of a vessel, for the loss of certain packages of glassware, by reason of negligence in stowing and conveying them; after proof of the place and manner of the loss of the vessel, and evidence on the questions, whether the goods were stowed under deck, and whether they could have been washed out by the sea, if they had been so stowed; a witness acquainted with the navigation about the place of the loss of the vessel, and who was near the place at the time of the loss, cannot be asked whether, taking into view the condition and situation of the vessel, and all the accompanying circumstances, the goods could, in his opinion, have been broken to pieces in the hold, or washed out of the hold, if they had been stowed therein

SHAW, C. J. This was case for negligence against the owners of a vessel, as common carriers, in not stowing properly under deck, and conveying safely, packages of glass-

ware, by means of which they were lost.  They had been laden on board the defendants' schooner, at Boston, and bills of lading given, promising to carry them safely to New York, "dangers of the seas excepted;" and the question was, whether the loss was within the exception.

It was proved that the schooner, whilst prosecuting this voyage, was driven ashore on Hart Island, at the head of Long Island Sound, and the goods lost.  It was alleged by the plaintiffs, but denied by the defendants, that the goods lost were carried on deck, instead of being securely stowed under deck; and that became substantially the fact in issue.  It was conceded, that if the packages of glassware were stowed on deck, without the permission of the shippers, it was proof of negligence, which would render the carriers responsible for the loss.

Much evidence was offered on both sides, upon the controverted fact, whether the packages of glassware were stowed under deck, and, as incident thereto, the plaintiffs introduced evidence tending to show, that if they had been stowed under deck, they would have been found there, although in a damaged condition, so that they could be identified; because, upon the facts proved, they could not have been washed out or broken to pieces, if they had been there.  On the other hand the defendants attempted to prove that the main hatch was forced off, and holes beaten in the bottom of the vessel, by force of the wind and sea, at the time the schooner stranded by means of which the packages might have been washed out.

In this state of the evidence, Brown, a witness for the plaintiff, stated that he had been acquainted with the navigation about Hart Island thirty years, and been stranded there, and was employed in saving and getting off wrecked vessels, and was near the place on the night in question.' The plaintiffs then proposed to ask him whether, taking into view the condition and situation of the vessel, and all the accompanying circumstances of the case, the goods in question could, in his opinion, have been broken to pieces in the hold, or washed out of the hold, if they had been stowed therein, in the manner testified to by the defendants' witnesses.  This was

objected to and rejected. The question on this exception is, whether it should have been admitted.

In weighing circumstantial evidence, the opinion of a witness is often useful, and indeed necessary; but as its admission is contrary to the general rule, and limited to particular cases, it depends so much upon the other evidence which has been given, the nature of the facts to be proved, and the particular posture of the case, it is often extremely difficult to apply it in practice. The principle, upon which this evidence is admissible, is clear and entirely just. In applying circumstantial evidence, which does not go directly to the fact in issue, but to facts from which the fact in issue is to be inferred, the jury have two duties to perform; first, by a rigid scrutiny of the evidence to ascertain the truth of the fact to which the evidence goes, and thence to infer the truth of the fact in issue. This inference depends upon experience. When we have ascertained by experience, that one act is uniformly or generally the cause of another, from proof of the cause, we infer the effect, or from proof of the effect, we infer the cause. For instance; it being ascertained by long experience that arsenic is a deadly poison, if it were proved that one took arsenic and was found dead, the inference would be, that his death was caused by that poison; or if, upon a *post mortem* examination, arsenic were found in the stomach, it would be inferred that the death was caused by it.

Now when this experience is of such a nature that it may be presumed to be within the common experience of all men of common education, moving in the ordinary walks of life, there is no room for the evidence of opinion; it is for the jury to draw the inference. It is not because a man has a reputation for superior sagacity, and judgment, and power of reasoning, that his opinion is admissible; if so, such men might be called in all cases, to advise the jury, and it would change the mode of trial. But it is because a man's professional pursuits, his peculiar skill and knowledge in some department of science, not common to men in general, enable him to draw an inference, where men of common experience, after all the facts proved, would be left in doubt. Suppose a vessel has been

stranded, and the charge is, that it resulted from unskilful and careless navigation.   After all the evidence given of the state of the wind and weather, the position and distance of the land, the sail carried, the course steered, and the nautical manœuvres adopted, landsmen, men of common experience, would be unable to infer that the disaster was caused by bad seamanship, rather than inevitable accident; whereas, a man of nautical experience might draw a certain inference, and pronounce it attributable to the one or the other cause.   *Folkes* v. *Chadd,* 3 Doug. 157 ; 1 Greenl. Ev. § 440; 6 N. Hamp. 463.

In the present case, this court are of opinion, with the judge who tried the cause, that these questions were not proper for the opinions of the witness ; they were inferences to be drawn from facts within common experience, not depending on peculiar experience, especially such as the witness said he possessed.   We think the same rule applies to the rejection of the opinions of the other witnesses, as stated in the answers given in their depositions, which were objected to, and rejected by the court.

In view of the difficulty of laying down any rule on this subject, precise enough for practical application, the only proper course seems to be, to keep the principle steadily in view, and apply it according to all the existing circum. stances affecting the particular case.   *Exceptions overruled.*

*W. Sohier,* for the plaintiffs.

*B. F. Hallett,* for the defendants.